1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

3

4 UNITED STATES OF AMERICA,      ) Case No. 5:23-MJ-00356-DUTY
                                 )
5           Plaintiff,           )
                                 ) Riverside, California
6 vs.                            )
                                 ) Thursday, July 20, 2023
7 MELANIE HARRIS,                )
                                 ) (2:06 p.m. to 2:56 p.m.)
8           Defendant.           )
_____)
9

10

                TRANSCRIPT OF INITIAL APPEARANCE
11             BEFORE THE HONORABLE SHERI PYM
                UNITED STATES MAGISTRATE JUDGE
12

13

  Appearances:                   See next page.
14
  Court Reporter:                Recorded; CourtSmart
15
  Courtroom Deputy:              Kimberly Clark
16
  Transcribed by:                Jordan Keilty
17                                Echo Reporting, Inc.
                                  9711 Cactus Street, Suite B
18                                Lakeside, California 92040
                                  (858) 453-7590
19

20

21

22

23

24

  Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

2

1  APPEARANCES:

2  For the Plaintiff:              CORY BURLESON, ESQ.
                                   Assistant United States
3                                    Attorney
                                   Office of the United States
4                                    Attorney
                                   3403 10th Street, Suite 200
5                                  Riverside, California 92501
                                   (951) 276-6267
6
   For the Defendant:             CHARLES EATON, ESQ.
7                                  Federal Public Defenders
                                     Office
8                                  Riverside Division
                                   3801 University Avenue
9                                  Suite 700
                                   Riverside, California 92501
10                                 (951) 276-6346

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    <u>Riverside, California; Thursday, July 20, 2023 2:06 p.m.</u>

2                          --o0o--

3                       (Call to order)

4         THE CLERK:  Case number 23-356, United States

5    versus Melanie Harris.

6         Counsel, please state your appearances for the

7    record.

8         MR. BURLESON:  Good afternoon, your Honor.  Cory

9    Burleson for the United States.

10        THE COURT:  Good afternoon.

11        MR. EATON:  Good afternoon, your Honor.  Charles

12   Eaton, seeking appointment on behalf of Ms. Melanie Harris,

13   who is present before the Court and in custody.

14        THE COURT:  Good afternoon, and good afternoon.

15        Melanie Harris, is that your true name?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.  Ms. Harris, I have here,

18   first of all, a financial affidavit which you appear to have

19   signed.  Did you sign this financial affidavit?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And is your understanding you were

22   signing this under penalty of perjury?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And is everything here true and

25   correct to the best of your knowledge?

4

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  I do find you're entitled

3  to appointment of counsel.  I'll appoint Mr. Charles Eaton

4  from the Federal Public Defenders Office to represent you in

5  this case.

6          THE DEFENDANT:  Yes.

7          THE COURT:  And then I have a written advisement

8  of your statutory and constitutional rights which you also

9  appear to have signed.  Did you read and sign this statement

10  of your rights?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you have any questions about your

13  rights at this time?

14          THE DEFENDANT:  No.

15          THE COURT:  All right.  And then have you received

16  a copy of the petition for violation of pretrial release

17  that was filed against you in the Southern District of

18  Florida?

19          THE DEFENDANT:  It's been given to me.

20          THE COURT:  Okay.  Have you had a chance to read

21  through that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand what it is that the

24  -- the Pretrial and Probation Office said you did?

25          THE DEFENDANT:  It is not true.

5

1         MR. EATON:  Hold on.

2         THE COURT:  No, I --

3         MR. EATON:  Your Honor, may I have a moment?

4         THE COURT:  Yes.

5    (Pause.)

6         MR. EATON:  Your Honor, could you re-ask the

7 question?

8         THE COURT:  Yes.  So, do you understand, Ms.

9 Harris, what it is that the Probation and the Pretrial

10 Office is claiming you did?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  And then I have a waiver

13 of rights form in an out-of-district case which you also

14 appear to have signed.  Did you sign this waiver?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And did you understand that by signing

17 this, you were giving up the right to an identity hearing?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And you're also giving up your right

20 to arrival of process?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And, before you signed this, did you

23 have a chance to talk with your attorney about these rights

24 and the consequences of waiving them?

25         THE DEFENDANT:  Yes.

6

1       THE COURT:  Is it your desire to give up these

2 rights and so be ordered to appear in the Southern District

3 of Florida in this case?

4       THE DEFENDANT:  Yes.

5       THE COURT:  All right.  I do find your waiver is

6 made knowingly and voluntarily.  So, I'll accept that.

7       All right.  And then, with respect to the matter

8 of bail and detention, are both sides ready to proceed?

9       MR. BURLESON:  Yes, your Honor.

10       MR. EATON:  Yes, your Honor.

11       THE COURT:  All right.  Then, Mr. Burleson, let me

12 ask first of all what the Government's proffers for pretrial

13 detention.

14       MR. BURLESON:  Thank you, your Honor.  The

15 Government proffers the Pretrial Services Report and its

16 recommendation for detention, as well as the violation

17 petition and two Riverside Police Department reports which

18 are dated June 9th, 2023, which I provided to the Court

19 earlier today which relate to the underlying petition.

20       THE COURT:  Thank you.

21       And do you accept that proffer, Mr. Eaton?

22       MR. EATON:  I do, your Honor.

23       THE COURT:  All right.  Then, Mr. Burleson, I'll

24 hear any argument you wish to make.

25       MR. BURLESON:  Thank you, your Honor.

*Echo Reporting, Inc.*

7

1          The Government here is particularly concerned with
2   the danger that is shown in the underlying -- in -- in the
3   Riverside Police -- Police Department reports.
4   Specifically, your Honor, as your Honor will recall, the
5   Defendant appeared in March and was on an indictment for
6   communications of threat to injure and then harassing calls.
7   And at that point, your Honor, the Government I think
8   initially filed a detention request but ultimately withdrew
9   detention and agreed to bond.  And in large part, at that
10  time, your Honor, it was because at that point there had
11  been no violence shown by the Defendant.
12          Particularly concerning here, your Honor, is while
13  on pretrial release, the Defendant, when we expect them to
14  be on their best behavior, has, you know, committed multiple
15  acts of violence as alleged in the report.  I -- I
16  understand they're allegations and they are underlying
17  charges that have not been proven.  But at this point, your
18  Honor, it seems that the Defendant has increased or at least
19  has shown now that she has a potential for violence given
20  the details in the -- the Riverside Police Department
21  reports, specifically in dealing with the police officer who
22  arrested her and in dealing with the police officer and the
23  medical staff at the hospital following her arrest on June
24  9th.
25          So, with that, your Honor, given the escalation

8

1   and given that the District Court in this case did issue a

2   no bail and no bond warrant, the Government would seek

3   detention.

4               THE COURT:  Thank you.

5               Mr. Eaton?

6               MR. EATON:  Thank you, your Honor.

7               Your Honor, this is not in any way disparagement

8   of counsel here.  I completely respect the Government and

9   Mr. Burleson, but in this case in particular, I think this

10  is particularly egregious what's happening to Ms. Harris,

11  and I'll start with the allegation that she has been

12  arrested for.

13              Reading -- quoting from the petition, the petition

14  says:

15              "On June 9th, 2023, the Defendant

16              was arrested for, one, assault on a

17              police officer, two, resisting,

18              obstruction or delaying arrest and,

19              three, misdemeanor domestic violence."

20              That is the entire allegation against Ms. Harris.

21  Again quoting from the petition, it lists out the special

22  conditions that were placed upon her by the District Judge

23  in -- or by the Court in Fort Lauderdale, Florida, and the

24  special conditions are as follows:

25              "One, surrender all passports and

9

```
1           travel documents;
2           Two, report to Pretrial Services as
3           directed;
4           Three, participate in mental health
5           assessment and treatment;
6               Four, no contact with victims,
7           witnesses, AUSA, and the case agent;
8               Five, no firearms;
9               Six, may not visit transportation
10          establishments unless for court;
11              Seven, travel extended to the
12          Southern District of Florida and the
13          Central District of California; and
14              Eight, must reside at the residence
15          provided on the record."
16              I wanted to go through all that, your Honor,
17  because it is not illegal to get arrested for something.
18  Your Honor -- I'm sure your Honor's aware from all the
19  different supervised release, pretrial release cases that we
20  do in this court, if you commit an act that is a violation,
21  if you fail to inform your probation officer within 72
22  hours, that's a violation.  Those are the violations.
23  Neither of these is even alleged in the allegation for the
24  violation of pretrial release.  The allegation is that she's
25  been arrested.  That is simply not a crime.  That is not a
```

10

1  crime.  Getting arrested is not a crime.  I don't know why
2  she is here, especially I understand that there is a factual
3  dispute between Ms. Harris and the police officers in this
4  case.  I understand the police officers have their version,
5  but Ms. Harris believes she's been racially discriminated
6  against, arrested twice and beaten in the hospital with her
7  head slammed into a wall a couple of times.  That's
8  unconscionable.
9          Ms. Harris has zero criminal history points.  Her
10 last conviction was a misdemeanor in 2013, which would not
11 apply because of the 10 years.
12         Also, your Honor, I take issue with the
13 description in the Pretrial Services Report describing Ms.
14 Harris's residence with her mother as a lack of a suitable
15 residence because of the alleged issue that she got into
16 with her -- with her boyfriend as described in the police
17 report.  I take issue with it because if it's -- it's -- she
18 is living with her mom, care taking her mom at that
19 residence.  If it's a lack of a suitable residence, assuming
20 it's a lack of a suitable residence, it's a lack for the
21 boyfriend.  I shouldn't expect Ms. Harris to move out of her
22 -- move out of the house that her mom stays in, her elderly
23 mother, to whom -- with whom that she takes care of because
24 her mother is 79 years old.  I don't understand why it's
25 ascribed to her that it's a lack of a suitable residence and

11

1  not to the boyfriend, even assuming the allegations in the

2  police report are correct, which we should not assume,

3  because, as the Government accurately stated, these are just

4  as alleged.

5          And, so, your Honor, I have a bond.  Ms. Harris'

6  mom, Yvonne Rowe (phonetic), has offered to put up $7500

7  bond on $1800 monthly retirement.  However, your Honor, I

8  genuinely feel this is -- she didn't -- there should not

9  even be a bond in this case.  She should be released OR.

10 This is not a crime.  There is no crime here, and the idea

11 of taking Ms. Harris into custody for something that's not a

12 crime and not a violation, it -- it just doesn't make sense.

13 So, I'm requesting OR.

14         THE COURT:  Well, let me -- let me ask you, I'm

15 assuming -- and I -- I understand your concern about how the

16 petition was raised because the -- you know, the -- because

17 that she was arrested for this, and it sort of includes in

18 there that she actually did this, which the standard

19 conditions of the court prohibit --

20         MR. EATON:  Sure.

21         THE COURT:  -- engaging in criminal conduct.  So,

22 I -- I think that's what's implied in your argument.  I did

23 understand your concern about the phrasing.

24         You know, I have -- this is -- this is a difficult

25 situation.  I remember when Ms. Harris came in on the first

12

1  charge.  The indictment lays out in, you know, a fair amount
2  of detail some pretty awful threats in my recollection, and
3  part of what's -- you know, what's alleged in these police
4  reports is, you know, when you get into the -- the actual
5  violence at issue here, that's -- you know, it's fairly
6  modest.  It's -- we're talking about, you know, in terms of
7  what's alleged, it would be sort of incessant, again, racist
8  remarks that are being alleged here.  It -- it raises -- the
9  concern in my mind is -- is whether, you know, Ms. Harris --
10 it wasn't -- it wasn't the original incident that the police
11 were called for.  It's the -- whether she's able to control
12 herself, whether this all -- it seems to me it escalated
13 from may what be a mental health issue, and it -- it seems
14 that what started out as something fairly small has become
15 something more significant.
16          MR. EATON:  Your Honor, may I be heard on that?
17          THE COURT:  Yes.
18          MR. EATON:  I completely understand the Court's
19 concern.  Again, not admitting to the truth of the
20 allegations, there may, in fact, be some mental health
21 issues that need to be addressed.  In fact, today, Ms.
22 Harris was scheduled for a psychological evaluation to take
23 place in our office, the Federal Public Defenders Office in
24 Riverside that her attorney in Florida had set up for her.
25 That's what her plan was to do today, but she was arrested

13

1  this morning at her home.

2          And -- and regards to the allegation in the

3  petition, your Honor, your Honor, I completely understand

4  your point about what's implied by the allegation, but we

5  have -- we have to go by what's here, and we can't -- they

6  -- I didn't type it up.  You didn't type it up.  You know,

7  the AUSA's in Florida -- or the PO wrote it up.  But, as

8  alleged, this is not a crime, and I'm uncomfortable with the

9  idea of construing what could be -- because maybe they don't

10 mean that.  Maybe they mean she didn't contact her PO within

11 72 hours, which is normally what I would see in the case of

12 an arrest.  We just are doing a lot of assumptions that I --

13 I don't think are appropriate when we should just go with

14 what they say.  And what they say is not a crime.  And, so,

15 I'd just be very uncomfortable with construing any type of

16 what the meant to say in this particular case.  I think we

17 should go with what they said.  Either way, letting her out

18 here, she still has to answer.  She still has to go to

19 Florida.  And if there's an issue, they have a chance to

20 amend and change and go in front of a judge and say, Oh,

21 well, we actually meant to say this.  Okay.  Fine.

22          The -- they arrested her today on this.  They

23 shouldn't get a chance to then construe and say, well, we

24 should -- we meant something else when she's been drug out

25 of bed.  Her day is messed up.  She's been arrested.  She

14

1  has the violation and the shame and disgrace of getting drug

2  out of bed with her boyfriend and her mom and cuffed and

3  brought here.  They should not get the benefit of the doubt

4  in terms of then fixing why she's supposed to be here if

5  this is not a crime.  And I -- I do feel very strongly about

6  this, your Honor.  I apologize if I'm -- if I feel too

7  strong.  I -- I don't think this should be happening.

8          THE COURT:  Does he -- where does this -- the

9  arrest took place on June 9th.

10          MR. EATON:  Uh --

11          THE COURT:  How long was she in state custody?

12          MR. EATON:  So, my understanding, she was arrested

13  on June 9th when the police came to her house and there was

14  an altercation in the house which resulted in her going to

15  the hospital, and then in the hospital there were more

16  potential injuries dealt to her in the hospital that, based

17  on information and belief, I'm informed that she was wearing

18  open-toed sandals, and one of the police officers with boots

19  intentionally stepped on her toes in order to cause pain and

20  aggravation.  Additionally, her head was slammed into a wall

21  multiple times, and her arm, right arm, was yanked

22  uncomfortably.

23          And I understand the police have their version of

24  events.  Factual disputes are occurring.  That's okay.  But

25  in terms of this case, she should be OR'd to go see what's

15

1  going on.  There's no allegation she doesn't show up when

2  she's not supposed to show up (sic), no allegation that

3  she's out of contact, that her PO can't find her, that she's

4  missing.  It's just an arrest, and that -- that's just not a

5  crime.

6          THE COURT:  All right.  Well, this -- and what you

7  said brings up another point that I want to address, and

8  maybe, Mr. Burleson, you can address this, but says that the

9  basis for having a hearing on the matter of bail or

10 detention is a serious risk of flight, and my concern is

11 that is there really a real basis for that here, that just

12 her -- you know, it's not that she's been fleeing.  As I

13 understand it, she has shown up in court when ordered to at

14 the last hearing.  So, I am concerned about whether there's

15 really a basis for us to even get into this matter and how

16 I'm to hear on bail or detention without a serious risk of

17 flight or any -- you know, I guess -- I guess it could be a

18 risk of, you know, noncompliance is more what we're talking

19 about here.

20         MR. BURLESON:  Yes, your Honor, that's exactly

21 where I was going.  And I will note that there was no

22 appearance in Florida.  The -- the appearance in Florida was

23 via Zoom.  So, she did not actually travel to Florida is my

24 understanding in speaking with the assigned AUSA to the

25 case.

*Echo Reporting, Inc.*

16

1          Yeah, I think the concern on risk of flight, your

2 Honor, really is a lack of ability to follow the Court's

3 conditions, a lack of the Court being able to set conditions

4 that could be followed.

5          THE COURT:  All right.  Is there anything else you

6 wanted to say at this time, Mr. Burleson?

7          MR. BURLESON:  May I have a moment, your Honor?

8          THE COURT:  Yes.

9      (Pause.)

10          MR. BURLESON:  No, your Honor.  I would just like

11 to note I did, as I mentioned, speak with the charging AUSA,

12 and he did request that the Court -- if the Court was

13 inclined to grant bond, that the Court issue a stay so that

14 they could seek an appeal with the District Court Judge

15 given that the District Court Judge had entered a no bond

16 arrest warrant.

17          THE COURT:  Thank you.

18          MR. EATON:  Your Honor, may I be heard briefly?

19          THE COURT:  Yes.

20          MR. EATON:  Two things, your Honor.  First,

21 Government counsel noted that there was not actually an

22 appearance in Florida.  It was an appearance over Zoom that

23 she attended.  However, that is still a demonstration -- a

24 demonstration of her showing up.  As the Court knows, with

25 CDB cases, just because you're ordered to show up on Zoom

1  does not mean you show up on Zoom.  That -- you still have

2  to show up on a Zoom appearance.

3          Second, your Honor, Ms. Harris is in communication

4  with her Probation Officer.  She has made all of her

5  appointments with the Probation Officer.  There is no

6  evidence to the contrary that she misses anything.  Again,

7  zero criminal history points, and I understand the folks

8  would like a stay in order to appeal, and I don't have the

9  law in front of me as to whether or not they are entitled to

10 that if they ask or whether or not that's a discretionary

11 decision to your Honor.  If it's a discretionary decision of

12 your Honor, I would ask that you deny it.  There's just

13 nothing here.  There's just nothing here.  This is -- she's

14 a 58-year-old woman who takes care of her mom.  She got into

15 something with the police office.  They filed -- they

16 arrested her, but being arrested is not a crime.  Not

17 anything in the petition that I read, all the special

18 conditions, there's nothing in here that she's alleged to

19 have violated.  She should not be here.  She should -- she

20 should be at home.  And, with that, I submit, your Honor.

21 I'm requesting OR, to be clear, but I have a bond prepared

22 if the Court is uncomfortable with OR, but I'm requesting

23 OR.

24         MR. ORTIZ:  And, your Honor, my apologies.  Good

25 afternoon.  I just wanted to go ahead and clarify, your

18

1  Honor, the Defendant did actually -- I reached out to the

2  officer who's assigned to the case, and she actually didn't

3  report when she was arrested. So, I just wanted to go ahead

4  and further clarify that.

5         I also want to go ahead and update the Court on

6  some incidents that happened after the -- the arrest that's

7  in question, your Honor. Unfortunately, the Defendant was

8  admitted into a mental health facility on June 19th due to

9  allegedly overdosing on some Xanax pills.

10        I just wanted to go ahead and update the Court.

11  Your Honor, we are concerned as to the mental health

12  component. And, again, just to go off of what the report

13  already goes -- already states, we're just concerned with --

14  with the lack of suitable residence should she be released

15  just given those concerns that we mentioned. But, again,

16  your Honor, just to go ahead and repeat what I've already

17  stated, she did not make contact with the Pretrial Office

18  when she was arrested.

19        MR. EATON: Your Honor, may I be heard on that

20  briefly?

21        THE COURT: Yes.

22        MR. EATON: Two quick points, your Honor. Number

23  one, there is a factual dispute about that. Ms. Harris

24  believes that she informed her Probation Officer within 72

25  hours after her release from custody, which may not have

1  been within 72 hours after she was arrested, but if she's in

2  jail, she's in jail.  So, she's -- Ms. Harris believes that

3  she informed her PO within 72 hours after her release from

4  custody of her police contact, number one.

5          And then, number two --

6      (Pause to confer.)

7          MR. EATON:  Ms. Harris believes that she was

8  released on a Saturday, and then she called her PO on Monday

9  to inform.

10          And then, second, your Honor, even taking what the

11 Pretrial Officer says is true, that's still not the

12 allegation that's alleged.  Maybe there are issues.  And, as

13 I told the Court, she was supposed to have a psychiatric

14 evaluation today in our office that was set up.  I'm not

15 saying that everything is necessarily perfect.  However,

16 should she be detained on an arrest before she goes to

17 Florida?  That -- that's -- that's -- that would be

18 unfortunate.  So, with that, I submit.

19          THE COURT:  All right.  Well, I'd like to tell you

20 that -- Mr. Eaton, that the real question before me is

21 whether to order her detained or not.  I can't -- certainly,

22 I don't -- what's -- as far as I know, it's a valid warrant

23 out of, as you cited, the District Court in the Southern

24 District of Florida.  So, that's not -- you know, I'm

25 accepting this is a valid warrant and, you know, certainly

20

1 it can be challenged whether it's adequate or not.  So, I

2 just need to decide as to whether detention is warranted at

3 this point or not.  Give me a moment.  I just want to read

4 the --

5          MR. EATON:  Understood.  Thank you, your Honor.

6      (Pause.)

7          THE COURT:  I'm just going to take a brief recess

8 (indiscernible.)

9      (Proceedings recessed briefly.)

10          THE CLERK:  We are back on the record in case

11 23-356, United States of America versus Melanie Harris.

12          THE COURT:  All right.  So, thinking this over,

13 there are -- and this is essentially a really close case

14 presented here in that I -- and there's -- what was alleged

15 to have occurred by -- in the incident with the police is

16 essentially a continuation of -- it's not a continuation,

17 but it's of the same like of what was in the indictment,

18 again, to the extent I recall in terms of some racially

19 disparaging remarks being made.  This is what was alleged,

20 and what was alleged to have occurred here is a series of

21 what's alleged in the indictment, but it does raise some

22 concerns in my mind about the continuation of that behavior.

23          It also -- I'm concerned that -- that the

24 Probation Officer supervising Ms. Harris seems to believe

25 that she's no longer amenable to supervision.

1          That said, really what I need to consider here is

2 whether I can set conditions that will assure that she

3 appears before the -- I think it's the District Judge who

4 issued the petition here -- that she'll appear as ordered

5 and whether that be by video or in person and -- and whether

6 she presents a danger to the community in the meantime, and

7 I don't -- I haven't really heard anything that leads me to

8 believe that that's the case that I can't set conditions

9 here, that, in fact, the conditions already set aren't

10 sufficient, because I -- I understand there may be a dispute

11 about whether she promptly reported the arrest or not.  But,

12 beyond that, I haven't heard anything that leads me to

13 believe she won't appear as ordered in court in Florida.

14 And while there -- things physically escalated to some

15 extent during this situation with the police, there's

16 nothing that leads me to believe she presents an ongoing

17 danger to the community if she remains out of custody while

18 she's waiting or before a hearing before she is appearing in

19 Florida.

20          So, I'm not at this time going to order that she

21 be detained.  I'm going to simply order that she remain on

22 the conditions that have already been set, including the

23 $50,000 bond.  I don't see that increasing the amount of

24 that bond is going to do anything to ensure her appearance.

25          That said, I am going to stay the order until

22

1 tomorrow, her release order until tomorrow to allow --
2 because I do think this presents a somewhat close case for
3 the reasons I said.  I -- I believe it is in my discretion
4 as to whether I grant the stay or not, but I am going to
5 grant a stay and order that Ms. Harris be temporarily
6 detained pending the -- a decision either to seek bond or
7 not -- or, I'm sorry -- to either seek reconsideration of my
8 ruling that Ms. Harris may remain on bond or not.
9         So, let me ask, Mr. Burleson, I -- I
10 (indiscernible).
11         MR. BURLESON:  Your Honor, I was going to ask for
12 Monday, but I understand tomorrow afternoon.  But -- and the
13 reason I was going to ask for Monday is because it is
14 already after 5:00 o'clock on the east coast.  But if it is
15 tomorrow afternoon, if we could have by close of business
16 tomorrow afternoon, that would be preferable.
17         THE COURT:  Let's say by 4:00 o'clock tomorrow
18 because, I mean, it's only -- I'm assuming they'll make a
19 decision in the morning, and it may be -- you know, in my
20 experience, the judge there is likely either to make a
21 decision by that time or else essentially order -- the judge
22 is going to extend the stay essentially --
23         MR. BURLESON:  Understood.  Thank you, your Honor.
24         THE COURT:  -- if there isn't a ruling by then.
25 But, so, I am going to order that Ms. Harris be detained

23

1  pending the decision -- a decision either by 3:00 o'clock
2  tomorrow, either to seek reconsideration or a ruling by the
3  Court on whether or not that -- whether or not Ms. Harris is
4  to be released on bond on the same conditions as previously
5  set.
6        I think what I just stated -- I'm not sure legal
7  terms, but --
8        MR. EATON:  Your Honor, may I ask a clarifying
9  question?
10       THE COURT:  Yes.
11       MR. EATON:  So, is -- is she detained pending
12 notification that an appeal has been lodged or is she
13 detained pending a decision on that appeal which needs to
14 come by close of business tomorrow?
15       THE COURT:  He -- what -- the order is that there
16 is a stay on her -- the release on bond on the same
17 conditions as before until 3:00 o'clock tomorrow.  By 3:00
18 o'clock tomorrow, if there isn't a decision by the Court in
19 Florida either -- one way or the other, either, you know,
20 that she be released on bond or that she be detained or
21 extending the stay.  It may be that the Court there extends
22 the stay, but it may -- if all this happens by 3:00 o'clock
23 tomorrow, if the Government has sought reconsideration that
24 there hasn't been any order of the Court there, then she'll
25 be released.

24

1          MR. EATON:  Understood.

2          THE COURT:  And 3:00 o'clock, you know, Pacific

3   Time tomorrow.

4          MR. EATON:  3:00 p.m. Pacific Time.  Understood.

5          MR. ORTIZ:  And, your Honor, I just wanted to go

6   ahead and confirm.  Is the Court declining then request to

7   -- to have the Defendant submit to drug testing if she is

8   released?

9          THE COURT:  All right.  I'm sorry if I missed

10  that.  So, her conditions -- she -- is there no drug testing

11  condition in place right now?

12         MR. ORTIZ:  No, your Honor.

13         MR. EATON:  Your Honor, I -- I can't speak on the

14  conditions she's under now, but I do understand that my

15  client does not have a history of substance abuse.  So,

16  without such history, I would not be surprised if she is not

17  under any drug testing conditions and would request that the

18  Court decline the invitation to impose such conditions since

19  she has no history of -- of testing dirty.

20         THE COURT:  Well, and can I -- can I just ask why

21  you're seeking -- that was one of the things in the police

22  reports in this Riverside incident that it noted they did

23  suspect she was under the influence, but --

24         MR. ORTIZ:  Correct, your Honor.  So, we -- so, we

25  were informed that she was actually admitted into a mental

1 health facility due to her overdosing on the Xanax pills.

2 That's why we're requesting it, your Honor.

3           We would also request that she also complete her

4 neurologist evaluation that she was originally scheduled to

5 complete today, just so that we can go ahead and ensure that

6 she's getting that mental health treatment that she was

7 continuing to go ahead and participate in.

8           THE COURT:  I think in light of -- okay.  In light

9 of the -- in light of the previous order or previous -- I

10 forgot about the Xanax overdose -- Xanax overdose.  In light

11 of that, what I am going to do is order -- I think -- I

12 think it is appropriate given that, that there be some drug

13 testing.

14           So, I am going to order that she be released as

15 previously stated on the conditions previously set but, in

16 addition, that I'm going to order that she not use or

17 possess illegal drugs or state authorized marijuana and

18 submit to drug testing, which may include (inaudible)

19 substance or testing, and Ms. Harris will have to pay all or

20 part of the cost of testing based upon your ability to pay

21 as determined by the supervising agency, and, if directed to

22 do so, participate in outpatient treatment as determined by

23 the supervising agency, in order to determine compliance,

24 will submit to a search of your person and property by the

25 supervising agency.  It may be in conjunction with law

1  enforcement.  And you are not to use for purposes of

2  intoxication any controlled substance, analog as defined by

3  federal law or any street synthetic or designer psychoactive

4  substance capable of impairing mental or physical

5  functioning except as prescribed by a medical doctor.  All

6  right.

7            And in terms of the testing, I think that that's

8  -- that was something -- it's your understanding is that

9  something that was set as a supervising condition or is that

10 something that her attorney had requested for the case?

11           MR. ORTIZ:  I can give no information to that,

12 your Honor.

13           MR. EATON:  And you're referring to the -- the

14 amount of drug testing she would be making?

15           THE COURT:  No.  I'm sorry.  The mental health

16 testing.

17           MR. ORTIZ:  Oh, that was by her attorney.

18           MR. EATON:  She also notified -- your Honor, she

19 had notified our office that she had that going on.  So, we

20 -- we believe it was a neurological appointment today.  I

21 believe it was scheduled at 9:00 a.m.  So, we were aware of

22 it.

23           THE COURT:  Okay.  I guess I'm not inclined to

24 specifically order that she conduct it because it sounds

25 like her attorney wants her to do that anyway.

1          MR. ORTIZ:  Okay.

2          THE COURT:  Mr. Burleson?

3          MR. BURLESON:  I was going to say, your Honor, in

4  the petition, the third special condition is participate in

5  mental health assessment and treatment.  So, I think that

6  may already be --

7          THE COURT:  Yes.  Because I was certainly already

8  informed of her supervision, that she participate in that,

9  and in terms of specifically completing that assessment, I

10  -- I think it's going to be that she needs to get out to

11  complete that at any rate, because that is part of it sounds

12  like (indiscernible).

13          MR. ORTIZ:  Thank you, your Honor.  We'll continue

14  that and monitor her mental health.

15          THE COURT:  All right.  Thank you.

16          MR. ORTIZ:  Thank you.

17          THE COURT:  So, I think we've been back and forth

18  on a lot of things here, but let me just ask, Ms. Harris,

19  essentially, the conditions -- provided that you get out

20  tomorrow or whenever, the condition of your release will be

21  the same as before except that you need to -- there's going

22  to be an additional drug testing condition.

23          Do you agree to comply with those conditions?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  Thank you.

28

1         And is there anything else?  Again, I think we've

2  been all over the place.  Is there anything else you can

3  clarify?  Oh, actually, I did set a date for her to appear

4  in Florida.

5         You -- do you know, Mr. Burleson, if her

6  appearance would be by Zoom or in person?

7         MR. BURLESON:  I do not, your Honor.

8         THE COURT:  All right.  So, what I'm going to do

9  is order, unless it's otherwise set by the Court in the

10 Southern District of Florida, is that, Ms. Harris, you need

11 to report in the Southern District of Florida on this

12 alleged violation of pretrial release no later than -- I'm

13 going to say no later than Friday, August 5th, 2023, so, a

14 little over two weeks from now.  Unless another date --

15 unless you hear from your attorney that there's another

16 date, you have to appear.  And I don't know whether that

17 appearance will be by Zoom or in person.  So, that's

18 information you'll have to get from your attorney about

19 whether it will be an in person or Zoom hearing.

20        THE DEFENDANT:  Okay.

21        THE COURT:  All right.  Is there anything further

22 in this case here today?

23        MR. BURLESON:  Not from the Government, your

24 Honor.  Thank you.

25        MR. EATON:  No, your Honor.  Thank you.

1          THE COURT:  All right.  Thank you.

2          So, at this time, Ms. Harris, you are ordered into

3    the custody of the United States Marshal pending

4    (indiscernible).

5          MR. EATON:  Thank you, your Honor.

6       (Proceedings concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

30

1          I certify the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5    /s/Jordan Keilty_____        7/25/2023_____
     Transcriber                            Date
6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
     /s/L.L. Francisco_____
9    L.L. Francisco, President
     Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25