UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60050-CR-ALTMAN/HUNT(s)

UNITED STATES OF AMERICA

v.

MELANIE HARRIS,

    Defendant.
_____

### UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE DRAFT PRESENTENCE INVESTIGATION REPORT AND REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE (DE 90)

The United States, by and through the undersigned Assistant United States Attorneys, respectfully files this Response to the Defendant's Objections to the Draft Presentence Investigation Report and Request for Downward Departure or Variance, stating as follows:

**Defendant's Objections to the Draft Presentence Investigation Report ("PSR")**

As a starting point, the government notes that the defendant is not objecting to the advisory Guidelines calculations contained in the draft PSR since she acknowledges that the Guidelines range in this case should be 15-21 months.  DE 90 at 4.

**Defendant's Objections to Paragraph 7 and 8**

The defendant objects to the last sentence of Paragraph 7, claiming it is "a conclusory opinion and not based on any actual statements by the victims" and that even if it was their statements, it should be in the Victim Impact of the PSR, not the Offense Conduct.  DE 90 at 1-2.  The government disagrees with the defendant, because this last sentence is simply an accurate description of the factual situation created by the defendant through her hateful and

vicious anti-Semitic conduct.

The defendant then asks this Court to remove Paragraph 8 in its entirety from the PSR, claiming that "[p]aragraph 8 … has nothing to do with Ms. Harris's offense conduct in this case." DE 90 at 2. The government disagrees with this objection, and asks that Paragraph 8 remain in the PSR in its entirety. Paragraph 8 provides information about the Tree of Life massacre that is "substantially and directly connected to the offense, under the facts of the case taken as a whole." U.S.S.G. § 2A6.1, cmt. n. 1. The information about the Tree of Life not only provides crucial context to understand the full harm caused by the defendant, but it also is substantially and directly connected to the defendant's actual offense conduct since her calls and voicemails were filled with references to "shot grandmas," a clear reference to the Tree of Life victims. In addition, the defendant began calling the Tree of Life and leaving the same type of vile messages at the exact same time she unleashed her flood of psychic terror against the victims, further establishing the substantial and direct connection between the Tree of Life and the defendant's offense.

Regarding the section of Paragraph 8 describing the Vanity Fair article written by Victim 3, the PSR does not imply or indicate that the defendant read this article. It simply describes the article, which was written and published online shortly after the massacre, providing context and identifying at least one source of public information identifying the victims, their religion, and their close connection to the Tree of Life. These were all facts that the defendant clearly somehow knew as reflected both by her targeting of these specific victims and by the content of her calls and voicemails, including her incessant anti-Semitic references to "Jamie" and "shot grandmas" among other vile statements. As such, this section helps to explain the direct and substantial connection between the Tree of Life massacre, the

defendant's calls to the Tree of Life, and her contemporaneous calls to the victims.

### Defendant's Objection to Paragraph 15

The defendant's objection to the characterization of her calls to the FBI is well-taken. While her biological father was the subject of the calls, they were not complaints about him. Rather they were repeated calls claiming that Russian terrorists had kidnapped him and were holding him somewhere in Los Angeles.

### Defendant's Corrections to Paragraphs 39, 40, 42, and 47

These corrections relate to the defendant's personal and family history and her physical condition. The government has no specific information on these issues.

### Defendant's Request for Downward Departure or Variance

The defendant lays out three main grounds for a downward departure or variance to a 12-month sentence. DE 90 at 4-8. The government will address them in the order raised by the defendant in her request. However, as a starting point, the government's opposition to the defendant's request is based on all the factual circumstances and legal arguments set out in the government's Motion for Upward Departure and/or Variance. DE 95.

### History and Characteristics of Ms. Harris

The defendant first notes that she has a long history of serious debilitating migraine headaches, leading to her receiving Social Security disability benefits since 2000. She also mentions that she suffered a stroke-like medical episode in 2017. DE 90 at 4. However, she does not explain how these specific conditions mitigate her criminal conduct or provide a basis for a sentence below the advisory Guidelines range.

The defendant also points out that prior to being taken into custody in July 2023, she was "her mother's primary caretaker for the last ten years." She indicates that her 80-year old

mother, Yvonne Lowe ("Ms. Lowe") has a rare and serious medical condition, and that she (the defendant) was responsible to maintain the household and take her mother to her medical appointments, duties now handled by her domestic partner.[1]  DE 90 at 5.  The government in no way seeks to minimize the health issues faced by Ms. Lowe, but this desire to return to her mother and those caretaking duties does not justify a downward departure or variance.

It is often the situation that incarceration impacts family members just as much, or even more, than the defendant being sentenced, and this situation is not outside the norm.  That is shown first and foremost by the fact that Ms. Lowe has been cared for during the now over nine-month period the defendant has been in custody.  In addition, as the PSR points out, the defendant has a half-sister, Pamela Lowe, who also lives in Riverside, California, and is a nurse, as well as a half-brother living in Colorado.  PSR at ¶ 40.  The fact that Ms. Lowe has two other children and one is a nurse living in the same city as she does, puts this family in a better caretaking situation than many that have a family member facing incarceration.

Whether the above-described concerns are considered as a request for a departure or a variance, the government urges this Court to deny that request.  In addition, the government does not believe that these circumstances present an obstacle to the Court departing and/or varying upward to the 36-month sentence sought by the government to adequately and appropriately reflect the harm caused to the victims by the defendant.

### The Need to Avoid Unwarranted Sentencing Disparities

The defendant cites data from the Sentencing Commission's Judiciary Sentencing

---

[1] The third ground relied on by the defendant for a below-Guidelines sentence is a diminished capacity claim.  However, that claim would seem to be contradicted by her indicating that for the past ten years, she has been taking care of her elderly mother with a serious and rare medical condition, including her medical appointments, while also managing their shared household.

Information tool ("JSI"), about the prison sentences imposed in 13 anonymous cases in the last five years that were governed by U.S.S.G. § 2A6.1 with a final offense level of 14 and a Criminal History Category of I, to support her claim that a below-Guidelines sentence of 12 months is needed to avoid unwarranted sentencing disparity. She points out that the average sentence in those cases was 12 months, and the median sentence was 10 months. DE 90 at 5-7. It is the government's view that because the defendant provides no specific information about any of those cases, such as the number and type of threats, the time frame covered by the threats, the number of victims, the motivations and nature of the threats, and other relevant circumstances, that anonymous data is of little or no value.

First, as Application Note 4 to § 2A6.1 explains, that guideline covers "a particularly wide range of conduct" and therefore, the cases making up the data cited by the defendant likely include many cases with far fewer threats or only one victim, as well as many that did not involve anything close to the four years of harassment and threats that the defendant unleashed on the victims in this case.[2] Similarly, the content and nature of those threats may have been less personal and terrifying than the anti-Semitic harassment and threats the victims here endured at the hands of the defendant. Without a showing that a significant number of the cases making up the JSI data are factually similar to this one, the government believes that the JSI data lacks any persuasive value.

In contrast, in its Motion for Upward Departure and/or Variance, the government addressed the § 3553(a)(6) disparity issue by discussing the specific facts of two other threat cases prosecuted here in the Southern District of Florida, and the sentences imposed on those

---

[2] Not only does § 2A6.1 cover threatening or harassing communications, it also covers hoaxes and false liens.

5

defendants. Relying on those actual specifics, the government then explained why an upward variance to a 36-month sentence was necessary to prevent an unwarranted sentencing disparity benefitting the defendant. DE 95 at 17-18. The government readopts this argument in full, and asks this Court to deny the downward departure or variance sought by the defendant, and to vary upward instead, to impose a 36-month sentence, which will fairly represent both the facts and circumstances of this case, as well as the stark differences between this case and the *Larkin* and *Wallace* cases cited by the government in that motion. DE 95 at 17-18.

### Ms. Harris' Mental Conditions and Diminished Capacity

A downward departure is not appropriate based on the facts and circumstances present in this case. Section 5H1.3 of the Sentencing Guidelines provides, in pertinent part, that "[m]ental and emotional conditions *may be* relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. (emphasis added). Although this Policy Statement states that mental and emotional conditions may be relevant in "unusual" cases, the Eleventh Circuit has held that "a defendant's mental and emotional condition *generally* are not appropriate grounds for departure." *United States v. Irey*, 612 F.3d 1160, 1183 (11th Cir. 2010) (citing U.S.S.G. § 5H1.3) (emphasis added); *see also United States v. Harris*, 493 F.3d 928, 932 (8th Cir. 2007) (downward departure denied on § 5H1.3 grounds for defendant who had limited intellectual functioning and a psychiatric disorder because defendant's "condition did not make him 'terribly unusual,'" recognizing that "mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted").

In this case, the defendant's mental and emotional conditions, to the extent detailed in the currently available information, are neither unusual nor distinguishable. Although the PSR outlines the defendant's various mental health diagnoses, a closer analysis of her mental health issues indicates that they can be properly managed with medication and mental health treatment, which is what the Probation Office recommends. PSR at ¶¶ 52-54. As articulated in its Motion for Upward Departure and/or Variance, the government maintains that an above-Guidelines sentence, as opposed to the below-Guidelines sentence the defendant seeks here, will ensure that the defendant receives necessary treatment—in the structured mental health environment that a custodial setting provides—for a long enough period of time to address her mental health issues. DE 95 at 15-16.

In addition, to the extent that the defendant is seeking to rely on additional information arising from Dr. Cunliffe's findings and conclusions, the government has not been provided any such report or summary as of the time of filing this response. In light of this, the government is asking that it be allowed to supplement its response, either in writing or at the sentencing hearing, to address any new information or conclusions that Dr. Cunliffe may offer.

Likewise, a downward departure is not warranted under § 5K2.13 of the Sentencing Guidelines. Section 5K2.13 states, in pertinent part, that "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. Application Note 1 defines "significantly reduced mental capacity" as a defendant who "has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." *Id*. at cmt. n. 1. Further, the Policy

Statement clarifies that this provision is not applicable if, *inter alia*, "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence[.]" U.S.S.G. § 5K2.13.

Here, the defendant does not meet the definition of significantly reduced mental capacity. A simple review of the facts of this case demonstrates that the defendant had the ability to understand the wrongfulness of her behavior when she intentionally blocked her phone number using the *67 feature, in an effort to conceal her identity from the victims and from law enforcement. The defendant did this for all 243 calls that she made to Victim 1. PSR ¶ 7.

Moreover, the defendant's actions—or lack thereof—establish that she did not have a significantly impaired ability to control her wrongful behavior because during an approximately two-year period from January 2020 to March 2022, the defendant significantly reduced the number of calls she initially made in 2019 (44 calls), to 9 calls. *Id*. at ¶ 12. Additionally, she made no calls from March 2022 to October 2022. *Id*. at ¶ 12-13. Nor did she continue these calls after her arrest, including while she was out on bond. This contrasts with other defendants charged with making threatening communications, who continued to harass their victims even after they were arrested for their crimes. *See United States v. Taylor*, 88 F. 3d 938, 946-47 (11th Cir. 1996); *United States v. Choy*, Case No. 20-20165-Cr-ALTONAGA.

Finally, a downward departure is not authorized under § 5K2.13 because the facts and circumstances indicate a need to protect the public since the offense involved a serious threat of violence. This Court needs no reiteration that this case involved serious threats of violence. And, as the government asserted in its Motion for Upward Departure and/or Variance, there is a need to protect the public from further crimes by the defendant because, as noted in the PSR at ¶ 53, it is unknown whether the defendant has changed, or whether she will repeat this behavior. DE 95 at

8

15-16. This is evinced by the fact that the defendant made virtually no calls to Victim 1 for over two years, until October 2022. Thus, a downward departure is not appropriate as demonstrated by the facts and circumstances of this case.

**Conclusion**

For all the above-stated reasons, the government respectfully requests that this Court (1) deny the defendant's request for downward departure or variance to 12 months in prison; and (2) grant the government's previously filed motion for upward departure and/or variance and impose a sentence of imprisonment of 36 months, followed by a three-year term of supervised release including mandatory mental health treatment.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ *Edward N. Stamm*
Edward N. Stamm
Assistant United States Attorney
U.S. Attorney's Office – SDFL
FL Bar #373826
99 NE 4th Street, 8th Floor
Miami, Florida 33132
Tel: (305) 961-9164
Email: Edward.Stamm@usdoj.gov

By: /s/ *Nardia Haye*
Nardia Haye
Assistant United States Attorney
U.S. Attorney's Office – SDFL
Court ID No. A5502738
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9326
Email: Nardia.Haye@usdoj.gov